**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Plaintiff-Appellee,**

v.

**AUTOMOBILE UNDERWRITERS, INC., et al., Defendant-Appellant.**

**No. 15831.**

United States Court of Appeals Seventh Circuit.

Feb. 8, 1967.

James C. Jay, Indianapolis, Ind., for appellant, Steers, Klee, Jay & Sullivan, Indianapolis, Ind., of counsel.

James E. Rocap, Jr., Indianapolis, Ind., for appellee, Rocap, Rocap, Reese & Robb, Indianapolis, Ind., of counsel.

Before HASTINGS, Chief Judge, and MAJOR, Senior Circuit Judge, and CASTLE, Circuit Judge.

HASTINGS, Chief Judge.

This is an appeal from a judgment of the district court in a diversity action for declaratory judgment brought by State Farm Mutual Automobile Insurance Company, an Illinois corporation, against Automobile Underwriters, Inc., an Indiana corporation.

The district court held that Underwriters had a duty to defend a negligence action instituted against the driver of a car belonging to one of Underwriters' insureds, and to pay any judgment and costs against the driver in such action not exceeding $25,000.

James W. Odle, a student at the University of Arizona, used and maintained a 1955 Pontiac automobile titled to his father, Wilbur C. Odle, of Noblesville, Indiana. The father was the named insured in an automobile insurance policy issued by Underwriters to him covering the Pontiac. The son was also insured according to the terms of the policy, which, with respect to persons covered, reads:

"(1) The Named Assured and any resident of the same household

"(2) any other person using such automobile provided the actual use thereof is with the permission of the Named Assured or an adult member of his household."

On October 3, 1962, in Tucson, Arizona, David Franklin, a close friend of James Odle, who had used Odle's Pontiac on a number of occasions, asked Odle for permission to use the Pontiac the

following day for the purpose of returning from a garage to which he planned to take his own car for repairs.

While Odle was told that Franklin was going to drive the Pontiac, Franklin instead arranged for his wife, Sydney, to drive the Pontiac to the garage to pick him up, while Franklin at the same time drove his own car there to leave it for repairs. On the way to the garage, Sydney was involved in an accident which resulted in injuries to one Berkey B. Walker.

Walker filed an action for damages against David and Sydney Franklin in the Superior Court of Pima County, Arizona. State Farm Mutual, Franklin's insurer, undertook the defense of the Arizona action and tendered such defense to Underwriters. Underwriters refused; and State Farm Mutual brought this declaratory judgment action against Underwriters.

The issue which the trial court decided adversely to Underwriters was whether, under the omnibus provisions of its policy, paragraph (2), quoted supra, Sydney Franklin was an additional insured. As framed by the trial court, the issue was

"whether Sydney Franklin, while using the borrowed Pontiac for the purpose for which it was loaned, and in the absence of a specific prohibition by the owner against its use by a second permittee, came within the provisions of the defendant's policy affording protection to persons other than the named assured 'provided the actual use thereof is with the permission of the named assured or an adult member of his household.' "

Underwriters contends that the coverage of the policy does not extend to a second permittee who has not received permission from the insured to drive the car. Underwriters has cited a number of treatises and cases to the effect that a permittee has no authority to confer permission upon a third party to drive an automobile as an additional assured. This correctly states the law in a number of jurisdictions.

Since the insurance policy was written and issued by Underwriters in Indiana, the law of Indiana is to be applied in its construction. There is, however, no Indiana case law directly in point, except the decision in Arnold v. State Farm Mutual Automobile Ins. Co., 7 Cir., 260 F.2d 161 (1958), in which this court set out the rule of law it believed Indiana courts would adopt in construing an omnibus clause in an automobile insurance policy.

The question in *Arnold* was whether an omnibus clause, insuring any person using the automobile with permission, extended to an employee who had an accident with the automobile while deviating from the purpose and use for which permission was given. Three different views on the question were distinguished: a strict rule in which the vehicle must have been used within the scope of the permission; a "minor deviation" rule under which only major deviations from the permitted use excluded coverage; and a liberal or broad rule under which we said that the permittee "need only to have received permission to take the vehicle in the first instance, and any use while it remains in his possession is 'with permission' though that use may be for a purpose not contemplated by the assured when he parted with possession of the vehicle." Arnold, supra, at 164. We held there that the Indiana case law as found in American Employers' Ins. Co. v. Cornell, 225 Ind. 559, 76 N.E.2d 562 (1948) and Mercer Casualty Co. of Celina, Ohio v. Kreamer, 105 Ind.App. 358, 11 N.E.2d 84 (1937) clearly indicated Indiana courts of appeal would accept the liberal rule as applied to the circumstances of that case. Arnold, supra, 260 F.2d at 164.

The decision of this court in Standard Accident Ins. Co. v. New Amsterdam Cas. Co., 7 Cir., 249 F.2d 847 (1957), a diversity case requiring the application of Illinois law, also involved the application of a broad rule of omnibus clause construction. There, a first permittee, properly using a car for a permitted purpose, requested another to

drive the car for him in pursuance of that purpose. It was held that in Illinois, a first permittee has implied authority to permit another to use the automobile if the car is used for the same purpose for which initial permission was given and if the first permittee was present in the car.

The Indiana case of *Kreamer,* supra, holds that an owner can, through a blanket authority given a first permittee alone, extend policy coverage under an omnibus clause to second permittees not even known to the owner.

The *Cornell* case, supra, holds that permission sufficient to satisfy an omnibus clause for a second permittee's use of a car can be implied from silence on the part of an insured owner who was present when the first permittee gave the permission.

The facts in the instant case are not directly within the holdings of these Indiana cases, nor that of the *Arnold* case, for here there was no blanket authority, the owner was not present when permission was given the second permittee to use his car, and there is no question of deviance in the use of the automobile.

■ In view of the Indiana cases cited and our determination in *Arnold* that Indiana follows a liberal or broad approach in the construction of omnibus clauses in automobile insurance policies, we hold that where the insured placed no prohibition or restriction, express or implied, upon the use or user of the automobile, and the use was within the scope of the permission given the first permittee, the second permittee was insured under the omnibus clause in the automobile insurance policy under construction in this case.

■ The instant holding is but one step removed from that in *Standard Accident,* the Illinois case, in that the first permittee was not physically present in the car when his wife was driving it for the intended purpose. If Franklin had driven the loaned car to the garage, while his wife drove his own car there to leave it for repairs, there could be little question but that the instant policy covered such use.

Here, since there was no deviation from the use intended and no prohibition against another using the car for the intended purpose, it seems clear to us that there was an implied permission given for the wife of the first permittee to drive the car, under the circumstances of this case, to accomplish the intended purpose. We conclude this is what the Indiana courts would hold.

The judgment of the district court is affirmed.

*Affirmed.*

MAJOR, Senior Circuit Judge (dissenting).

I am unable to agree with the result reached in this case. In dissenting, I shall make a few comments which I hope are pertinent.

In the beginning, I am not satisfied with the issue as framed by the trial court. The issue as stated in plaintiff's brief is, "The question to be considered in this case is whether or not Appellant's policy extended coverage to Sydney Franklin, a second permittee, while using the vehicle in serving the purpose for which permission had been extended to David Franklin, the original permittee." Consistent with the pleadings, defendant in its reply brief states, "In this case, the question of whether or not a permittee as such has the authority to delegate the use and operation of the vehicle to still another is the question at issue."

In describing the circumstances under which Sydney was using the car at the time of the accident, the opinion states, " * * * while Franklin at the same time drove his own car there to leave it for repairs," thereby indicating that both cars were driven to the garage simultaneously. As I understand, Franklin drove his car to the garage for repairs and, while there, telephoned his wife to pick him up. It was in response to this call that she drove the Pontiac involved in the accident.

For my purpose there is no point in any extended discussion of previous cases. They are all distinguishable on the facts and, as I understand, it is conceded that none of them are decisive of the question for decision. The opinion states, "The instant holding is but one step removed from that in Standard Accident [249 F.2d 847] * * *." That may be correct, but it is a big step which I am unwilling to take because it extends coverage to persons indefinite and uncertain in number, who are or may be strangers to the parties designated in the insurance contract.

The terms of the policy involved in the case are stated in the opinion. They describe the persons covered in language so plain and unambiguous that all who read can understand, and there is no room for interpretation or construction. What the majority is doing in effect is amending the coverage provision by adding, "(3) Any other person using such automobile with the consent of the person granted such permission, provided such use has not been expressly prohibited by the Named Assured or an adult member of his household." Such a result, in my view, cannot be justified, whether we follow a liberal or non-liberal rule of construction.

In Aetna Casualty & Surety Co. v. De Maison, 213 F.2d 826, 834 (CA–3), the Court held, "* * * that permission to use an automobile does not in itself, by implication, include an authority to delegate such permission to a third person." The Court cites in support of this statement Card v. Commercial Casualty Insurance Co., 20 Tenn.App. 132, 95 S.W.2d 1281. In that case, the Tennessee court made a statement (95 S.W.2d 1284), irrefutable I think, as follows: "The 'additional assured' clause in effect gives the named assured the discretionary power to select 'additional assureds.' This discretionary power cannot be delegated to another. * * * The element of risk underlies all forms of insurance. The insurer has a right to assume that the risk he undertakes shall not be enlarged. The extent of the risk is the basis of all tabulated premium charges. * * * The insurer looks first to the standing and reputation of the named assured, and trusts his discretion in selecting other persons to operate the car. * * * the named assured has no power to delegate his discretion; he must personally approve and give 'permission' in order to bring the other person within the coverage of the policy."

The instant opinion states, "If Franklin had driven the loaned car to the garage, while his wife drove his own car there to leave it for repairs, there could be little question but that the instant policy covered such use." I agree, but it could be added that if he had done so there probably would have been no accident. Instead of driving the car himself, he delegated to another person the authority with which he had been entrusted.

The opinion reaches the ultimate conclusion that Sydney had the implied permission of Odle to use the car because there was "no deviation from the use intended and no prohibition against another using the car for the intended purpose * * *." In my view, this conclusion is without logic or good reason and I doubt if it is supportable by any authority. If the conclusion is accepted, any person, however irresponsible, who drove the car to the garage at Franklin's request did so with the implied permission of Odle and thereby became a person assured. In that instance it could be claimed, as it is here on behalf of Sydney, that there was "no deviation from the use intended and no prohibition against another using the car for the intended purpose."

The two Indiana cases, American Employers' Ins. Co. v. Cornell, 225 Ind. 559, 76 N.E.2d 562 (1948), and Mercer Casualty Co. of Celina, Ohio v. Kreamer, 105 Ind.App. 358, 11 N.E.2d 84 (1937), relied upon in the opinion, in my judgment furnish no support for the application in this case of the implied permission theory. A comparison of the factual situation in those cases with that here

inferentially at least supports the opposite conclusion.

In Cornell, title to the car was in the wife who could not drive and never had possession of the car. It was driven by her husband, who kept the keys and had the entire responsibility for its use. Both husband and wife were friends of one Beal who lived in the same rooming house. Beal had driven the car both in company with the husband and wife and when neither was with him. The husband, wife and Beal were sitting together in a tavern, when Beal asked the husband if he could borrow the car. The husband told Beal that he could and handed him the keys. This conversation and transaction took place while all the parties were seated at a table in the tavern, within the presence and hearing of the wife. While Beal had possession of the car, he was involved in the accident giving rise to the litigation. On that factual basis the Court held that Beal had implied permission from the wife (owner of the car) to drive it at the time in question. On the facts of the case it is hardly discernible how the Court could have reached any other conclusion.

In contrast, the facts in the instant case show that not a word was spoken between Odle and Franklin from which the former could even have inferred that the latter would permit some other person to drive the car. More important, Sydney was not present when Odle granted Franklin permission to use it. Thus, she heard nothing and knew nothing about the arrangements. In this respect, she and Odle were strangers to each other.

In Kreamer, Mary Macey and Richard Graber were friends. Macey who held title to the car permitted it to be driven by Graber. An agreement existed between them that either could use the car and permit any one to drive it whom he or she thought competent. Graber permitted one Weikel to drive the car and, while so doing, the latter was involved in an accident which gave rise to the litigation. The Court found that Macey, in

whom the car was titled, had given permission to Graber to drive the car and that she had also conferred blanket authority upon him to let any person drive the car whom he thought was a competent driver. Thus, Kreamer, like Cornell, furnishes no support for the implied permission theory relied on in the instant case.

I would reverse the judgment, with directions that the defendant be exonerated from liability on its insurance contract in issue.