Anthony J. **RAINES**, Joshua J. Learman, Gladys Barbee and Enterprise Rent–A–Car, Appellants–Defendants,

v.

**AUTO–OWNERS INSURANCE COMPANY, Appellee–Plaintiff.**

No. 20A05–9805–CV–248.

Court of Appeals of Indiana.

Dec. 18, 1998.

---

690

Alan L. Weldy, Goshen, for Appellants–Defendants.

Sean E.G. Kenyon, Robert J. Konopa, South Bend, for Appellee–Plaintiff.

### OPINION

HOFFMAN, Senior Judge.

Appellants-defendants Anthony Raines and Joshua Learman appeal from the trial court's grant of summary judgment in favor of Appellee-plaintiff Auto–Owners Insurance Company. The relevant facts are set forth below.

Gladys M. Barbee and her husband (collectively, "Barbee") had liability insurance coverage on their automobile provided by Auto–Owners Insurance Company ("Auto–Owners"). The policy provided that "[w]hile the automobile is withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction, such insurance as is afforded by this policy with respect to such automobile applies with respect to another automobile not owned by the named insured while temporarily used as a substitute." Because an automobile accident in June, 1995, destroyed the automobile insured under this policy, Barbee rented a temporary replacement automobile from Enterprise Rent–a–Car ("Enterprise") on June 7, 1995. At the time Barbee executed the rental agreement, and with the knowledge and consent of Enterprise, she designated her daughter, Shirley Myers ("Myers"), as an additional driver of the replacement automobile. In fact, Barbee never drove the automobile, preferring instead to allow Myers to drive it for them.

On June 20, 1995, Myers permitted her son, Anthony Raines ("Raines") to drive the car to deliver some prescription medication to Barbee. At that time, Raines requested and obtained Myers' permission to go swimming after he delivered the medication. After the errand was completed, Raines permitted Learman to drive the vehicle, with Raines accompanying him as a passenger. While Learman was driving the vehicle, a single-auto collision occurred, causing damage to the vehicle and injury to Learman and Raines. The collision gave rise to three different causes of action, the last of the three

being an action for declaratory judgment filed by Auto–Owners against Learman, Raines and Barbee, seeking a determination that it was not liable to satisfy a judgment in excess of $14,500 which Raines had obtained against Learman.[1] During the course of the declaratory judgment suit, Auto–Owners moved for summary judgment, arguing that Learman was not a permissive user of the automobile under the terms of the omnibus clause in Auto–Owners' policy as affected by the terms of the Enterprise rental agreement. The omnibus clause reads as follows:

A. "INSURED" shall mean:

(1) ... the named insured and any person using the automobile and any person or organization legally responsible for its use, provided the actual use thereof is with the permission of the named insured or if the named insured is an individual, with the permission of an adult member of the household who is not a chauffeur or domestic servant.

The trial court granted Auto–Owners' motion for summary judgment, finding as a matter of law that Learman was not a permissive user, and denied a subsequent motion to correct errors filed by Learman. This appeal ensued.

■■■ In reviewing a decision on summary judgment, this court applies the same standard as the trial court: whether the designated evidentiary matter demonstrates that there is no genuine issue as to any material fact and whether the moving party is entitled to judgment as a matter of law. *Becker v. American Family Insurance Group*, 697 N.E.2d 106, 107–08 (Ind.Ct.App.1998); *Miller Brewing v. Bartholemew County*, 674 N.E.2d 193, 198 (Ind.Ct.App.1996), *trans. denied*, 683 N.E.2d 592 (1997); Ind. Trial Rule 56(C). We may not search the entire record to support the judgment, but may only consider that evidence which has been specifically designated to the trial court. *Indiana Farmers Mutual Ins. Co. v. Richie*, 694 N.E.2d 1220, 1222 (citing *North Snow Bay v. Hamilton*, 657 N.E.2d 420, 422 (Ind.Ct.App. 1995)). We construe the pleadings, affidavits, and designated materials in a light most favorable to the non-movant and give careful

scrutiny to assure that the losing party is not improperly prevented from having its day in court. *Hartford Acc. & Indem. Co. v. Dana Corp.*, 690 N.E.2d 285, 291 (Ind.Ct.App.1997), *trans. denied* (citing *Miller v. Mem. Hosp. of South Bend*, 679 N.E.2d 1329, 1330 (Ind. 1997)). When there are material disputed facts, or if undisputed facts give rise to conflicting reasonable inferences that affect the outcome, they must be resolved in favor of the non-movant. *Warner Trucking, Inc. v. Carolina Cas. Ins. Co.*, 686 N.E.2d 102, 104 (Ind.1997) (citation omitted). Judge Najam, writing for this court, has noted that "the construction of an insurance contract is a question of law for which summary judgment is particularly appropriate." *State Farm Mut. Auto. Ins. Co. v. Gonterman*, 637 N.E.2d 811, 813 (Ind.Ct.App.1994).

The case before us does not present material disputed facts, but rather undisputed facts which arguably give rise to conflicting reasonable inferences. Auto–Owners contends that it is entitled to summary judgment because Learman was not driving with the permission, either express or implied, of the insured, Barbee. Learman and Raines argue in their separate briefs that to rule as a matter of law that Learman did not have permission is a misreading of the law of our State, in particular Ind.Code § 27–1–13–7 and Indiana's Financial Responsibility Act, found at Ind.Code § 9–25–4–4. The second issue Learman raises on appeal is whether the trial court erred in not awarding to Learman attorney fees he incurred in defending the declaratory judgment action brought by Auto–Owners against him.

Ind.Code § 27–1–13–7 provides, in pertinent part:

No policy of insurance against loss or damage ... shall be issued or delivered in this state to the owner of a motor vehicle, by any domestic or foreign corporation, insurance underwriters, association or other insurer ... unless there shall be contained within such policy a provision insuring such owner against liability for damages for death or injury to person or property resulting from negligence in the operation

---

1. Auto–Owners later amended its complaint to include Enterprise as a defendant as well.

of such motor vehicle, in the business of such owner or otherwise, by any person legally using or operating the same with the permission, express or implied, of such owner.

It is because of this statutory provision that omnibus clauses such as the one at issue in this case are written and included in automobile liability insurance policies.

It is well settled that Indiana courts, when construing omnibus provisions in insurance contracts, follow the "liberal" rule or approach. *Manor v. Statesman Ins. Co.,* 612 N.E.2d 1109, 1113 (Ind.Ct.App.1993), *trans. denied.* This court has adopted the following articulation of the liberal rule:

> one who has permission of an insured owner to use his automobile continues as such a permittee while the car remains in his possession, even though that use may later prove to be for a purpose not contemplated by the insured owner when he entrusted the automobile to the use of such permittee.

*Id.* (quoting *Arnold v. State Farm Mut. Auto. Ins. Co.,* 260 F.2d 161, 165 (7th Cir. 1958)). This court, in both *Manor* and *Gonterman,* held that notwithstanding the liberal approach, "when the owner places restrictions on use of the vehicle, violations of such use restrictions may terminate the initial permission." 612 N.E.2d at 1114; *Gonterman,* 637 N.E.2d at 814. Both *Manor* and *Gonterman* involved situations factually dissimilar from the case at bar. In *Manor,* the insureds were two brothers doing business as Manor Brothers Concrete. The company had a policy that all but three designated employees were required to obtain permission before using company vehicles for personal business. The putative permittee, a

company employee, was using a company dump truck for personal business one weekend without having obtained permission, and collided with the vehicle of a third party, causing personal injuries to both passengers in the third-party vehicle. This court stated the issue in that case as, "whether coverage under an insurance policy's omnibus clause can be implied when personal use of the vehicle is subject to an express use restriction." 612 N.E.2d at 1111. The facts of *Gonterman* also involved an express use restriction. The driver in that case, Anthony Gonterman, was driving a vehicle with the permission of the insured's daughter; however, the daughter had been expressly forbidden by her parents to loan the vehicle to others. The court stated one dispositive issue: whether Gonterman was a permissive user of the insured's automobile under the policy's omnibus clause. After acknowledging the applicability of the liberal rule of construction, the court relied upon affidavits designated to the trial court in which the insured averred that he had repeatedly informed his daughter that no other person was permitted to drive the vehicle to find that Gonterman's use was outside the scope of the permission given the first permittee, the insured's daughter.[2]

However, the 7th Circuit, applying Indiana law, has relied upon *Arnold* to hold that where the insured placed no prohibition or restriction, express or implied, upon the use or user, and the use was within the scope of the permission given the first permittee, the second permittee was insured under the omnibus clause in the automobile insurance policy under construction in the case. *State Farm Mut. Auto. Ins. Co. v. Automobile Underwriters,* 371 F.2d 999, 1002 (7th Cir. 1967).[3] In *State Farm,* the insured was Wil-

---

**2.** After so holding, the court turned its analysis to the argument, offered by the appellees, that the daughter had had "apparent authority" to authorize others to drive the vehicle. Although it is worth noting that the *Gonterman* court reiterated an earlier holding rejecting such apparent authority reasoning (*Riverside Ins. Co. of America v. Smith,* 628 F.2d 1002 (7th Cir.1980)), no apparent authority argument has been advanced by any of the appellants in the instant case, and thus that portion of the *Gonterman* decision has no application.

**3.** The *State Farm* court also drew upon the Indiana cases *Ohio v. Kreamer,* 105 Ind.App. 358, 11 N.E.2d 84 (Ind.App.1937), *trans. denied* (holding that an owner can, through a blanket authority given a first permittee alone, extend policy coverage under an omnibus clause to second permittees not even known to the owner) and *American Employers' Ins. Co. v. Cornell,* 225 Ind. 559, 76 N.E.2d 562 (Ind.1948) (holding that permission sufficient to satisfy an omnibus clause for a second permittee's use of a car can be implied from silence on the part of an insured

bur Olde, the father of James Olde. James was an insured as well under the terms of the Automobile Underwriters policy, which provided that persons covered were:

(1) The Named Assured and any resident of the same household

(2) any other person using such automobile provided the actual use thereof is with the permission of the Named Assured or an adult member of his household.

James permitted his friend David Franklin to use the automobile to return from a garage where he was leaving his own car for repairs. Franklin in turn permitted his wife, Sydney, to drive the automobile; while driving, she was involved in an accident. In holding that Sydney was covered under the policy's omnibus clause, the court reasoned that although the facts were not directly within the holdings of *Arnold, Cornell,* and *Kreamer,* Indiana courts would find an implied permission, because there was no deviation from the use intended and no prohibition against another using the car for the intended purpose.

■ The facts of the case before us are more like those in *State Farm* than those in *Manor* or *Gonterman. Manor* involved an employer-employee relationship as well as a clear use restriction conveyed through company policy. *Gonterman* involved a parent who had expressly forbidden his daughter to loan the car to others, and the trial court had before it affidavits to that effect. The appellants before us designated to the trial court the affidavit of Myers, stating "I know Joshua Learman ... He had on prior occasions operated my own vehicles with my permission. I trusted him and I believed he was a good driver" and "I did not tell my son AJ Raines not to let anyone else operate the vehicle and if Joshua Learman requested permission to drive the Neon vehicle, I would have permitted him to do so." There was also designated to the trial court the affidavit of Gladys Barbee, stating that she "never told Shirley Myers ... not to let anyone else drive the rental Neon vehicle." We cannot say that as a matter of law, a reasonable factfinder could not infer from these facts that

Learman had Barbee's and/or Myers' implied permission.

Auto-Owners also urges us to find that the terms of the rental agreement with Enterprise operated as an express use restriction. The Enterprise form read, in part:

ADDITIONAL DRIVER—NONE PERMITTED WITHOUT ENTERPRISE'S APPROVAL

I request Enterprise's permission to allow

/s/ *Shirley Myers*

Who is under my control and direction to drive the rented vehicle for me and in my behalf. I am responsible for their acts while they're driving, and for fulfilling terms and conditions of this agreement. (R. 80).

Shirley Myers was listed as the additional driver, and the agreement was signed by Gladys Barbee. Auto-Owners argues that this language makes clear that Myers had no authority to allow anyone else to use the car. They rely in this assertion on *Standard Mutual Insurance Co. v. Pavelka,* 580 F.Supp. 224 (S.D.Ind.1983). *Pavelka,* much like *Gonterman,* involved an insured parent who allowed his son to drive the vehicle, but with the express restriction that he could not allow anyone else to drive it. The policy at issue in *Pavelka* contained language slightly different from the Barbees' policy:

Persons Insured—The following are insured under Part 1

(a) With respect to the owned automobile,

(1) the named insured and any resident of the same household

(2) Any other person using such automobile with the permission of the named insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission.

The *Pavelka* court reasoned that to find that the son's friends had implied permission would extend coverage beyond that afforded by the contract. 580 F.Supp. at 226.

*Pavelka* is not sufficient to support Auto-Owners' contention for two reasons. First, the difference in policy language is not insig-

owner who was present when the first permittee gave the permission).

nificant. The language at issue in *Pavelka* provides that the use must be "within the scope of such permission." The language of the Auto–Owners policy at issue, however, does not place any caveat on the scope of the use. Second, Auto–Owners has provided no authority for its contention that such permission can be constrained or limited by a separate contract such as the one with Enterprise. Auto–Owners would have us hold that because the vehicle was a rental car, a stranger to the contract (insurance policy) between Auto–Owners and Barbee can interfere with that contract. Yet the unambiguous terms of that contract provide that "[w]hile the automobile is withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction, such insurance as is afforded by this policy with respect to such automobile applies with respect to another automobile not owned by the named insured while temporarily used as a substitute." We will not hold for the first time today that as a matter of law, the Enterprise contract is tantamount to an express restriction such as the one in *Pavelka.* This is in keeping with our decisions in *State Farm Fire & Casualty Co. v. White,* 168 Ind.App. 118, 341 N.E.2d 782, 785 (Ind.Ct.App.1976), *trans. denied* ("Since the purported qualifying phrase relies upon 'permission' for its meaning, and since permission may be implied, the inquiry for the trier of fact remains the same"); and *Liberty Mutual Insurance Co. v. Metzler,* 586 N.E.2d 897, 904–05 (Ind. Ct.App.1992), *trans. denied* (fact issue as to whether employee truck driver had permission to drive truck to pub precluded summary judgment).

■ Learman's second contention, that his attorney fees incurred in defending the declaratory judgment action brought by Auto–Owners, will succeed or fail in part depending upon the fact-finder's determination as to whether he is an insured under the policy, and in part depending upon the determination as to whether or not Auto–Owners acted in bad faith in denying coverage to Learman. In *Mikel v. American Ambassador Casualty*

*Co.,* this court held that an insured who had brought a declaratory judgment action against his insurance company could *not* recover the fees incurred in that action, despite the fact that the insurance company did eventually grant him coverage. 644 N.E.2d 168, 172 (Ind.Ct.App.1994), *trans. denied,* 652 N.E.2d 503 (Ind.1995). The insurance policy at issue in *Mikel,* just as the Auto–Owners policy at issue in the instant case, provided that the company would pay on behalf of an insured, "reasonable expenses incurred at our request." The *Mikel* court took pains not to extend its holding to the situation which we address today: "We are not asked to decide, nor do we decide, whether when the insurer brings a declaratory judgment action and the insured prevails, the insurer has "requested" that the insured incur attorney's fees." 644 N.E.2d at 171, fn. 2. The court found that the plain meaning of the word "request" could not encompass the situation where the putative insured is the party bringing the declaratory judgment action. Nonetheless, the *Mikel* decision is instructive for its discussion of the American Rule [4] and for its reasoned treatment of the split among other jurisdictions which have addressed the fee issue in declaratory judgment actions between insurers and their putative insureds. The court gave great weight to the fact that Mikel had not alleged that American Ambassador Casualty Company had acted in bad faith. "Our holding is consistent with the long-standing rule in Indiana that the insurer may dispute claims in good faith." 644 N.E.2d at 172 (citing *Erie Ins. Co. v. Hickman,* 622 N.E.2d 515, 520 (Ind.1993) and *Vernon Fire & Casualty Ins. Co. v. Sharp,* 264 Ind. 599, 349 N.E.2d 173, 181 (Ind.1976), *reh'g denied* ).

Just as we cannot hold as a matter of law that Learman did not have implied permission to use the automobile, we also cannot hold as a matter of law that Auto–Owners' filing of a declaratory judgment action was undertaken in bad faith.

---

**4.** The American Rule provides that the parties to litigation are required to pay their own attorney's fees, absent an agreement, statute or rule to he

contrary. *See also Johnson v. Sprague,* 614 N.E.2d 585, 590 (Ind.Ct.App.1993).

Reversed and remanded to the trial court for proceedings consistent with this opinion.

SHARPNACK, C.J., and SULLIVAN, J., concur.